IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| CARLOS BERNARD WIDEMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:15CV273 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Carlos Wideman ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff protectively filed his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") on August 24, 2011 and March 29, 2011, respectively, alleging a disability onset date of August 9, 2010 in both applications. (Tr. at 192, 196.)[1] Plaintiff, through his attorney, later amended the alleged onset date to May 17, 2011

---

[1] Transcript citations refer to the Administrative Record [Doc. #6].

(Tr. at 295.) His applications were denied initially (Tr. 96-109, 132-45) and upon reconsideration (Tr. at 110-31, 153-70). Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") (Tr. at 175-77), which he attended on August 26, 2013, along with his attorney (Tr. at 14). The ALJ ultimately issued a decision finding that Plaintiff was not disabled under the meaning of the Act (Tr. at 14-22), and on January 29, 2015, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be

4

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. Plaintiff therefore met his burden at step one of the sequential analysis. At step two, the ALJ further determined that Plaintiff suffered from a "remote history of bilateral ankle reconstruction surgery with residuals [and] degenerative joint disease." (Tr. at 16.) The ALJ found at step three that these impairments failed to meet or equal a disability listing. Therefore, the ALJ assessed Plaintiff's RFC and determined that he could "perform light work . . . except that he should have a sit/stand option and should sit 6 hours and stand/walk 2 hours total in an 8-hour workday." (Tr. at 17.) Based on that determination, the ALJ found under step four of the analysis that Plaintiff was capable of

---

determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

5

returning to his past relevant work as a rehabilitation technician. As a result of these findings, the ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act, from May 17, 2011, through the date of the ALJ decision. (Tr. at 22.)

Plaintiff now argues that the ALJ (1) failed to properly assess Plaintiff's residual functional capacity based on substantial evidence in the record, (2) erred by assigning improper weight to Plaintiff's treating physician, and (3) improperly relied on Plaintiff's work history, on gaps in Plaintiff's treatment, and on a lack of treating source opinions. (See Pl.'s Br. [Doc. #9] at 2.) Ultimately, none of Plaintiff's contentions merit remand.

   A. Residual Functional Capacity Assessment

Plaintiff first contends that the ALJ's RFC determination is not based on substantial evidence. Plaintiff notes that he was born with a foot deformity which required corrective surgery at the age of six months old. (Tr. at 302.) Though his surgery made it possible for him to walk, Plaintiff reports pain and weakness in his ankles as a result of his condition and contends that he can no longer work. (Id.) The ALJ reviewed Plaintiff's contentions and the evidence in the record, and concluded that Plaintiff was able to perform light work (lifting and carrying 20 pounds occasionally and 10 pounds frequently), with a sit/stand option, sitting 6 hours and standing or walking for 2 hours in an 8-hour workday. (Tr. at 17.)[4] The ALJ

---

[4] The ALJ noted that Plaintiff "worked at several physically demanding jobs despite his impairments over the years. In 2006, he worked briefly as an insulation technician carrying 25 pounds frequently and 50 pounds occasionally while walking 5 hours, standing 3 hours, climbing 5 hours, and kneeling, crouching, crawling, reaching, and handling large objects 5 hours a day. He worked as a carpenter technician/assistant from 1999 to 2000, where he walked 5 hours a day, stood 7 hours a day, and kneeled/crouched 1 hour a day. He also reported lifting 50 pounds or more, and lifting 25 pounds on a frequent basis. Prior to that, he worked as a cook in 1997 where he was standing 8 hours a day. Prior to that, he worked in ground maintenance from 1997 to 1999 carrying 25 pounds frequently and 50 pounds occasionally while walking 8 hours, standing 6 hours, and kneeling, crouching, and crawling 2 to 3 hours a day. In sum, although his job as a rehabilitation technician was approximately sedentary/light as performed, he actually has worked at many other jobs that were more physically demanding with essentially the same physical impairments." (Tr. at 21 (citation omitted).) The ALJ

considered the medical evidence from several physicians when making his assessment of Plaintiff's RFC, including consultative examiner Dr. Gish, as well as Drs. Nagy, Wilson, Comadoll, and Allison. As to each of these physicians, Plaintiff contends that the evidence supports a finding of disability. The Court therefore considers the ALJ's analysis of the evidence provided by each of these physicians in turn.

The ALJ gave significant weight to Dr. Gish's consultative examination. (Tr. at 20.) In particular, the ALJ noted that

> Dr. Gish observed the [Plaintiff] get off the exam table and walk around the room, but he could not stand on his heels or toes because of his ankles. He had slight difficulty walking in tandem fashion because he stated his ankles were stiff. He walked to his car, which was probably a quarter of a block away, and he walked "at a fairly fast rate." He did not have an assistive device with him the day of the examination. He had a slight antalgic gait secondary to his ankles.

(Tr. at 18, 304.) Although Dr. Gish could not elicit "ankle jerks" from him, Plaintiff had otherwise normal reflexes in the knees, ankles, triceps, and brachial radialis. (Id.) Dr. Gish concluded that Plaintiff's condition made it difficult for him to walk for long distances, but noted that Plaintiff did not have a cane or other assistive device with him the day of the consultative examination and was able to "walk to his car which was about a quarter of a block at a fairly swift rate." (Tr. at 305.) Based on these findings and the results of the examination, the ALJ concluded that Dr. Gish's consultative examination "shows that the [Plaintiff] had little difficulty with ambulation despite his longstanding feet/ankle congenital abnormalities." (Tr. at 20.) The ALJ relied on Dr. Gish's determination in concluding that Plaintiff could

---

accepted evidence to establish that Plaintiff could no longer perform "labor-type work" but concluded that he "remained capable of other physically less demanding job[s]." (Tr. at 21.)

7

perform light work with a sit/stand option, with an additional limitation of 6 hours sitting and only 2 hours standing or walking in an 8-hour day.

The ALJ also considered the findings of Dr. Christopher Nagy, who saw Plaintiff in May 2012 and assessed Plaintiff's foot pain stemming from his previously-corrected clubbed feet. Dr. Nagy recommended arch supports, a Medrol Dosepak, and Ultram, but refused to start a narcotics regimen because, in his opinion, Plaintiff's feet were not in "that bad a shape that he should require narcotics." (Tr. 19, 354.) Dr. Nagy instructed Plaintiff to continue mobilization and stated that Plaintiff could be up and about as tolerated. As to Plaintiff's functional capabilities, Dr. Nagy thought that Plaintiff would "have to spend most of his time in a sedentary type position in order to function in an acceptable fashion." (Id.) The ALJ considered this opinion and concluded that an RFC that allowed Plaintiff to sit 6 of 8 hours and stand 2 of 8 hours was generally consistent with Dr. Nagy's conclusion that "most" of Plaintiff's time would need to be spent in a seated or sedentary position. (Tr. at 19.)

The ALJ also considered treatment records from Dr. Wilson and Physician's Assistant James Watson at Piedmont Interventional. The ALJ noted that after Dr. Nagy refused to prescribe pain medication, Plaintiff went to Piedmont Interventional for a single visit in June 2012 and was prescribed hydrocodone. The ALJ noted, however, that Plaintiff did not return for further pain management, and subsequent records from other providers indicated that Plaintiff was not taking any pain medication through the rest of 2012 and 2013. (Tr. at 19-20.)

The ALJ also considered the records from Plaintiff's treating physician, Dr. Allison. The ALJ noted that Plaintiff received treatment from Dr. Allison in August 2012, but the

8

musculoskeletal abnormalities in his feet were not the primary purpose for his visit. (Tr. at 19.) Plaintiff complained of cluster headaches and allergic rhinitis and was prescribed medication for those conditions. Eight months later, in April 2013, Plaintiff followed up with Dr. Allison concerning hypertension, nausea, and anxiety. He did not mention pain as a result of his foot condition and was not on any pain medication at the time. (Tr. at 19.) On August 21, 2013 Plaintiff again saw Dr. Allison, this time complaining of pedal edema. (Tr. at 20.) Dr. Allison's examination, however, did not indicate the presence of edema or difficulty in ambulating. Dr. Allison did not make any notations of musculoskeletal abnormalities in his list of diagnoses, and did not treat Plaintiff for pain, as Plaintiff did not make any complaints of pain. (Id.)

Finally, the ALJ also considered the findings of the state agency medical consultant to inform his RFC assessment. In March 2012, Stephen Levin, M.D. reviewed the medical evidence from this case, ordered x-rays and reviewed those reports, and ultimately found that Plaintiff was capable of performing light work (lifting and carrying 20 pounds occasionally and 10 pounds frequently), while sitting for 6 hours and standing for 2 hours. (Tr. at 21.)

In challenging the ALJ's decision, Plaintiff cites to an opinion by Dr. Comadoll, who provided a one-time examination in July 2013 at the request of Plaintiff's counsel for disability determination purposes. Dr. Comadoll concluded that Plaintiff "obviously has a severe disability" and that he "would support [Plaintiff] with his disability." (Tr. at 358.) The ALJ considered the information from Dr. Comadoll, and noted that based on the notes of the examination, Plaintiff

> was not taking any pain medication, over-the-counter or prescribed. Dr. Comadoll made absolutely no abnormal findings about the claimant on physical

9

> examination (extremities with no clubbing, cyanosis, or joint deformity; ambulatory with/without assistance), yet he reiterated and relied upon the claimant's subjective complaints regarding his history of having clubfeet as a child and him feeling "miserable."

(Tr. at 20.) In considering the weight to give Dr. Comadoll's conclusion, the ALJ noted that conclusions as to whether an individual is "disabled" are administrative findings reserved to the Commissioner. The ALJ ultimately gave no weight to Dr. Comadoll's opinion "[c]onsidering the lack of abnormal findings documented in his exam, Dr. Gish's observations regarding [Plaintiff's] abilities despite his impairments, and Dr. Comadoll's failure to give [Plaintiff's] residual functional capacity in quantitative terms." (Id.)

As to all of this evidence, Plaintiff does not point to specific evidence that the ALJ overlooked or failed to consider; instead, Plaintiff appears to disagree with the ALJ's weighing of the evidence. Plaintiff specifically contends that "[a]lthough there is some evidence to support the ALJ's conclusion, the substantial weight of the evidence . . . is in Plaintiff's favor." (Pl.'s Br. at 3.) Plaintiff further submits that, although "the medical information is not robust, the information contained in their records is sufficient and is consistent with a conclusion that Plaintiff suffers from debilitating pain and swelling in his feet and ankles and is therefore disabled." (Id.) After discussing the evidence, Plaintiff concludes that "[t]he substantial evidence directs a much more restricted set of limitations than that found by the ALJ." Thus, Plaintiff seems to suggest that the medical evidence in the record weighs in his favor and would support a finding that he cannot work.

However, as noted above, this Court does not re-weigh the evidence to determine whether substantial evidence would support a finding of disability. Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the

responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589. Here, much of the evidence in the record is conflicting as to what extent these ailments affect Plaintiff's ability to work. The ALJ considered all of the evidence and made findings and determinations as noted above. Based on those findings, the ALJ determined Plaintiff RFC. That determination is supported by evidence that is "substantial" under the standards set out in Hunter, 993 F.2d at 34, and Mastro, 270 F.3d at 176. Accordingly, the Court finds no error in the ALJ's RFC assessment.

### B. Treating Physician Opinion

Plaintiff next contends that the ALJ failed to analyze Dr. Allison's opinion in accordance with Social Security Ruling ("SSR") 96-2p and 20 C.F.R. § 404.1527(c), better known as the "treating physician rule" (Pl.'s Br. [Doc. #9], at 5.). See also Hunter, 993 F.2d at 35. The treating physician rule generally requires an ALJ to give controlling weight to the well-supported opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2). However, if a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with

11

the other substantial evidence in the case record," it is not entitled to controlling weight. See Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *2; 20 C.F.R. §§ 404.1527(c)(2); see also Craig, 76 F.3d at 590; Mastro, 270 F.3d at 178. Instead, the opinion must be evaluated and weighed using all of the factors provided in 20 C.F.R. § 404.1527(c)(2)(i)-(c)(6), including (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion. Moreover, opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Social Security Act are never accorded controlling weight because the decision on that issue is reserved for the Commissioner alone. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

Where an ALJ declines to assign controlling weight to a medical opinion, she must "'explain in the decision the weight given' thereto and 'give good reasons in [his] . . . decision for the weight.'" Chirico v. Astrue, No. 3:10CV689, 2011 WL 6371315, at *5 (E.D. Va. Nov. 21, 2011) (unpublished) (quoting 20 C.F.R. § 404.1527(c)(2); 416.927(c)(2)). "This requires the ALJ to provide sufficient explanation for 'meaningful review' by the courts." Thomas v. Comm'r of Soc. Sec., No. Civ. WDQ-10-3070, 2012 WL 670522, at *7 (D. Md. Feb. 27, 2012) (unpublished) (citing Blakely v. Comm'r of Soc. Sec., 581 F.3d 399, 409 (6th Cir. 2009); Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 362 (3d Cir. 2011)).

In the present case, Dr. Allison provided a note that stated:

To Whom It May Concern:
The above patient [Carlos Bernard Wideman] must have his feet elevated to avoid any swelling or edema.
If you have any questions or concerns, please don't hesitate to call.

(Tr. at 360.) The ALJ discussed Dr. Allison's opinion in detail and concluded that this statement "is completely unsupported by all of his treatment notes and objective observations" of Plaintiff. (Tr. at 20.) The ALJ therefore gave "little weight" to this opinion. In analyzing Dr. Allison's treatment records, the ALJ noted in particular that Plaintiff went to see Dr. Allison in August 2012 and in April 2013 for other purposes, including allergies and headaches, but did not raise any musculoskeletal complaints and was not on pain medication. The ALJ went on to note that:

> The claimant saw Dr. Allison recently on August 21, 2013 complaining of pedal edema for the first time. His allergic rhinitis and migraine headaches were both stable on medication. Dr. Allison's examination was normal, without any notations of edema or difficulty ambulating. He did not include musculoskeletal abnormalities in his list of diagnoses, and again, did not treat the claimant for pain because he made no complaints of pain. No treatment was offered for the edema complaints either. Thus, it appears that the claimant has managed even without pain medication. . . .
>
> In a letter dated August 21, 2013, Dr. Allison stated the claimant must elevate his feet to avoid any swelling or edema. His statement is completely unsupported by all of his treatment no[t]es and objective observations of the claimant, as discussed above, and therefore the undersigned has given little weight to his opinion.

(Tr. 20) (citation to exhibit omitted).

Plaintiff contends that, contrary to the ALJ's finding, Dr. Allison's opinion is supported by earlier treatment notes, from September 23, 2011, documenting a visit in which Plaintiff complained of right foot pain, ankle swelling, and pain with ambulation. (Tr. at 307.) However, even as to that visit, the record reflects no medications (Tr. at 307), the examination does not note any edema, tenderness, decreased range of motion, or decreased stability (Tr. at 308), and Dr. Allison's assessment shows stable bilateral ankles/feet (Tr. at 308). Plaintiff also

13

contends that Dr. Allison's opinion is supported by objective imaging of Plaintiff's ankles and feet showing degenerative changes. (Tr. at 338-41.) However, the ALJ considered those x-rays in evaluating the evidence (Tr. at 19), and nothing in the record indicates that those x-rays support the conclusion that Plaintiff must elevate his feet. Indeed, the x-rays were ordered by the state agency consultant, Dr. Levin, who reviewed the x-rays and the medical evidence and concluded that Plaintiff could perform light work with sitting 6 hours and standing or walking 2 hours in an 8-hour day. (Tr. at 115-116.) Ultimately, with respect to Dr. Allison's statement that Plaintiff should elevate his feet, the ALJ explained the weight that he gave to Dr. Allison's opinion, and explained why the opinion was not supported by other evidence in the record, including Dr. Allison's own treatment notes and observations, as provided in 20 C.F.R. § 404.1527(c)(3) and (c)(4). Accordingly, the Court finds that the ALJ did not err in deciding not to give controlling weight to Dr. Allison's opinion.

### C. Reliance on Work History and Lack of Treating Source Opinion

Plaintiff next contends that the ALJ erred in noting that he left his last job because his employer closed down, not because of his functional disabilities. (Pl.'s Br. at 6.) Plaintiff notes that he testified regarding his gradual inability to perform the work and his decrease in hours due to his physical inability to perform the job. (Id.) However, the ALJ simply noted Plaintiff's own representations in his application and in his consultative examination, that he left his last position because it closed down. (Tr. at 22; Tr. at 268 (disability report/application by Plaintiff stating that he stopped working "[b]ecause of other reasons" that is, because "[t]he employer closed down," and that his condition became severe enough to keep him from working at the same time, on August 9, 2010); Tr. at 303 (stating in consultative examination

that he "worked for a mental health clinic until they no longer had jobs in this area").) Likewise, in concluding that Plaintiff could return to his past work, the ALJ used Plaintiff's own description of his prior position in his Work History Report. (Tr. at 22, 257.)

Plaintiff also contends that in light of his inability to obtain health insurance and pay the out-of-pocket costs associated with treatment, the ALJ improperly relied on his lack of treatment. Plaintiff suggests that although he did not have the resources to receive consistent medical treatment, the medical treatment and opinions that he did receive were sufficient to establish that he was disabled (Pl.'s Br. at 6). A claimant may not be penalized for failing to seek treatment he cannot afford. Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986). As this Court has noted,

> "[a] claimant may not be penalized for failing to seek treatment she cannot afford; '[i]t flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him.'" Lovejoy, 790 F.2d at 1117 (quoting Gordon v. Schweiker, 725 F.2d 231, 237 (4th Cir. 1984)). Social Security Ruling 96-7p, Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 (July 2, 1996) ("SSR 96-7p") provides that:
>
>> [T]he adjudicator <u>must not</u> draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment <u>without first considering</u> any explanations that the individual may provide . . . that may explain infrequent or irregular medical visits or failure to seek medical treatment. . . . For example:
>> . . .
>> The individual <u>may be unable to afford treatment</u> and may not have access to free or low-cost medical services.
>
> SSR 96-7p, 1996 WL 374186, at *7-8 (emphasis added). However, even if a claimant cannot afford medical treatment, he must "show that he has exhausted all free or subsidized sources of treatment and document his financial circumstances before inability to pay will be considered good cause." Gordon, 725 F.2d at 237.

15

Kirkland v. Colvin, No. 1:15CV00086, 2016 WL 126754, at *7 (M.D.N.C. Jan. 11, 2016).

In the instant case, the ALJ found that "[t]here is no evidence indicating that [Plaintiff] exhausted all resources available to individuals who cannot afford medical treatment or medication such as hospitals, clinics, or community agencies." (Tr. at 21.) However, the ALJ then focused again on the fact that Plaintiff had received treatment from Dr. Allison on multiple occasions without complaining about his musculoskeletal impairments, suggesting "that his condition has been manageable without treatment." (Id.) In these circumstances, this Court does not find that Plaintiff was improperly penalized for not seeking treatment outside of his financial means.

Finally, Plaintiff contends that "the ALJ is incorrect in stating that there is no treating source opinion." (Pl.'s Br. at 6.) Plaintiff cites the opinions of Dr. Allison, Dr. Nagy, and Dr. Comadoll as "provid[ing] evidence that Plaintiff's abilities are more restrictive than those found by the ALJ in his RFC." (Id. at 7.) However, the ALJ did not state that there was no treating source opinion. Instead, the ALJ stated that "no treating physician has opined that the claimant is disabled." (Tr. at 21.) As noted above, Dr. Nagy did not opine that Plaintiff was disabled, and the ALJ found that Dr. Nagy's opinion was consistent with the RFC. Dr. Allison did not opine that Plaintiff was disabled; he did opine that Plaintiff should keep his feet elevated, but the ALJ addressed that opinion and gave it little weight as discussed above. Finally, Dr. Comadoll did make general statements that Plaintiff had a "severe disability," but the ALJ found that "no treating relationship was established" by Dr. Comadoll's one-time disability examination, and in any event, the ALJ gave no weight to Dr. Comadoll's general

16

determination because it was not supported by any abnormal findings on examination and it failed to provide limitations in quantitative terms. (Tr. at 20.)

In sum, the ALJ's determination was supported by substantial evidence. To the extent Plaintiff attempts to point to substantial evidence supporting a finding of greater restrictions, Plaintiff is essentially requesting this Court to re-weigh the evidence. However, given the nature of this Court's review, this Court will not undertake such a re-weighing of the evidence. There is sufficient evidence in the record to support the ALJ's determination, and the ALJ's determination should therefore be affirmed.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion to Reverse the Decision of the Commissioner [Doc. #8] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #10] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 18th day of October, 2016.

/s/ Joi Elizabeth Peake
United States Magistrate Judge
